IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

THOMAS EMIL SLIWINSKI,

Plaintiff,

vs.

BRIAN GOOTKIN; PAUL REES; LT.
BILTOFT; CONNIE WINNER; LEVI
SHRIG; TANYA DEMPSTY; JOHN
DOES 1–2,

Defendants.

Cause No. CV 21-51-H-BMM-JTJ

ORDER

Defendants have moved for summary judgment. (Doc. 50.) Plaintiff Thomas

Emil Sliwinksi ("Sliwinski") objects.  (Docs. 65.) For the following reasons, the

Court will grant Defendants' Motion.

## I.  BACKGROUND

Sliwinski was previously at Montana State Prison ("MSP") and is now at the

Montana Department of Corrections' Riverside Special Needs Unit ("RSNU").

The details of this case are quite familiar to the litigants, as this is the third lawsuit

in the last few years related to this subject matter.

Briefly, Sliwinski suffered an injury to his abdomen in 2015 that has never

completely healed, despite having had surgery. He continues to have an abdominal

fistula and a draining sinus. (Doc. 52 at ¶ 9.) In 2018, Sliwinksi filed two lawsuits

against many of these same defendants, regarding what he considered to be

violations of his Eighth Amendment rights. (Doc. 52 at 2–3); *see Sliwinski v.*

*Salmonsen et al.*, CV 18-82-H-BMM-JTJ, and *Sliwinksi v. State,* 2020 MT 161N

(affirming state district court). Judgment was entered against him in both lawsuits.

Sliwinski filed this lawsuit about a year after the Montana Supreme Court

affirmed dismissal of his previous state action. (Doc. 52 at 3–4.) He alleges that the

defendants have violated his Eighth Amendment rights by not adequately treating

his abdominal wound, and he seeks money damages and an order directing the

defendants to arrange for him to be seen by a specialist and to have surgery. (Doc.

21 at 10–11.)

## II. ANALYSIS

Defendants seeks summary judgment for three reasons: (1) Sliwinski's

action is barred by res judicata; (2) Defendants have not violated Sliwinski's

Eighth Amendment rights; and (3) Defendants are entitled to qualified immunity.

(Doc. 51 at 6–7.) The Court concludes that the second contention is dispositive:

Defendants have not violated Sliwinksi's constitutional rights.

### A.  Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." The movant bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, which it believes demonstrate

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). A material fact is one that might affect the outcome of the suit

under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must

go beyond the pleadings and designate by affidavits, depositions, answers to

interrogatories, or admissions on file, "specific facts showing that there is a

genuine issue for trial." *Id*. The Court views the evidence in the light most

favorable to the nonmoving party and draws all justifiable inferences in the non-

moving party's favor when deciding a motion for summary judgment. *Id*. at 255;

*Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007).

## B.  Medical Care

Lack of medical care in a prison context may give rise to an Eighth

Amendment claim. A prisoner must allege that a defendant's "acts or omissions

[were] sufficiently harmful to evidence a deliberate indifference to serious medical

needs," to sufficiently state a §1983 claim for failure to provide medical care.

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

The Ninth Circuit employs a two-prong test for deliberate indifference to medical needs. A plaintiff first must show "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). A plaintiff then must show "the defendant's response to the need was deliberately indifferent." *Id.*

Deliberate indifference is a "high legal standard," *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and requires a showing of "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Wilhelm,* 680 F.3d at 1122. Such indifference may manifest in two ways. "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104–05). A showing of medical malpractice, negligence, or even gross negligence is insufficient to establish a constitutional violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97,104–05 (1976). A difference of opinion is also insufficient, as a matter

of law, to establish deliberate indifference. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

The parties do not dispute that Sliwinski has serious medical needs, including, in addition to his abdominal wound, dysphagia, diabetes mellitus, vascular disease, hypertension, edema, cellulitis of his hands and feet, and a cerebral vascular accident. (Doc. 52 at ¶¶ 27–29; Doc. 52-3 at ¶ 17.) The crux of this dispute is what level of care for those needs the Constitution demands.

The Affidavit of Defendant Dr. Paul Rees details Sliwinksi's medical care over the last few years. (Doc. 52-3); s*ee also* (Doc. 16-1) (Affidavit of Dr. Rees filed in support of Report to the Court, September 3, 2021.) The differences between these two reports, filed about fifteen months apart, are instructive, because during that time, Sliwinski continued to receive weekly wound care, seeing a doctor in Helena for over 75 weeks; he went to the emergency room more than once; and he saw several specialists related to whether he is currently a good candidate for abdominal surgery. (Doc. 52-3 at 3–9.) The portion of his medical record filed with the Court is extensive. (Docs. 52-3 and 63.)

Of ultimate importance here, however, is that several doctors have concluded that though he may benefit from the removal of an abdominal mesh that was inserted years ago, his current condition and comorbidities make the surgery inappropriate at this time. (Doc. 52 at ¶¶ 32, 49, 53, 55, and 62.)  Sliwinski was

5

previously evaluated in 2018 by Dr. Daniel Vargo of the University of Utah who

concluded that surgical intervention was not appropriate at this time and was "very

complex, meaning that it carries with it a lot of risks." (Doc. 52 at ¶ 32.) Defendant

Dr. Rees concurred with this assessment, though Sliwinski did not, and that

disagreement formed the basis of Sliwinski's prior suit. (Doc. 52 at 7.) Dr. Rees

focused on attempts to gain compliance on Sliwinski's comorbidities and

monitoring for clinical deterioration. (Doc. 52 at 8.) Defendants conclude that

Sliwinski has not taken the steps necessary to improve his comorbidities. (Docs. 51

at 20; 53 at 15, 17–18.)

Sliwinski has a much more dire impression of his health, and contends that

"[a]ll physicians that say plaintiff['s] abdomen won't get worse or that plaintiff

only needs to do wound care is living in fantasy land." (Doc. 65 at 3.) He refers to

his weekly wound care appointments with Dr. John Galt, but appears to dismiss

these appointments as irrelevant. (Doc. 65 at 3.) These weekly appointments have

also served a monitoring function, however, as he has occasionally been sent by

Dr. Galt to the emergency room for evaluation of other issues.

Sliwinksi visited the emergency room on June 26, 2021, related to

abdominal bleeding, and at that time, the provider noted "Continue to persue [sic]

surgical opportunities *as an outpatient* for difinitive [sic] management." (Doc. 52-3

(emphasis added).)

Sliwinksi saw Dr. Sydney R. Lillard for an evaluation on January 12, 2022.

Dr. Lillard provided the following prognosis:

> any attempt at surgical repair, with pre-existing suboptimal general health – diabetes, obesity, immobility, lymphedema – is likely futile. I would expect this to easily revert to another large abdominal wound, recurrent fistula, and hernia with any complication. As such I believe this is best tackled at a tertiary referral center (University of Colorado, University of Washington), with optimal resources of complex abdominal wall reconstruction, plastic surgery, and established long-term wound care facilities to manage an expected protracted hospitalization, and at a time when he has all outpatient resources available for healing and managing any expected complications. This would best be accomplished *when he is no longer incarcerated.*

(Doc. 52-3 at 83 (emphasis added).)

About a month later, Sliwinksi was seen by Dr. John Means, a board-certified abdominal surgeon. (Doc. 52 at 11.)  Dr. Means concluded that "based on [Sliwinski's] abdominal wall anatomy, he does not have good surgical options for definitive reconstruction to warrant [removal of his abdominal mesh.] I do not feel this nonhealing wound puts him at significant risk for complications or sepsis and I have recommended ongoing local wound care given the lack of definitive reconstructive options." (Doc. 53-3 at 90–91.) Dr. Galt, Sliwinksi's regular wound care physician, agreed with Dr. Means' conclusion. (Doc. 52-3 at 99.)

Dr. Rees arranged for another consult, this time a telehealth evaluation

on May 3, 2022, with Dr. Robert Yates, a University of Washington

abdominal surgeon. (Doc. 52-3 at 8–9.) Dr. Yates provided the following

conclusion:

> [c]onsidering the patient's multiple health risks including diabetes,
> obesity, lower extremity lymphedema, [chronic kidney disease], and
> recent cardiovascular issues, I do not believe that he will benefit from
> a surgical repair of his wound at this time. Once the patient is
> optimized from these multiple standpoints, he should return to the
> clinic [for] re-evaluation.

(Doc. 52-3 at 104.)

Sliwinski disagrees with these opinions. (Doc. 65 at 3–4.) He believes he

should have the surgery, and he believes that Defendants are violating his rights by

not pursuing another opinion at a tertiary care hospital, claiming Defendants

"stopped looking after two opinions from two sources." (Doc. 65-3 at 6.)

Sliwinski's response includes several particular instances when he asserts he did

not receive exactly what his doctors ordered.  (Doc. 65-3 at 2–4.) The question

presented here is not what Sliwinski would do if he were not incarcerated, or what

medical treatment he would receive. The question is whether the approach of these

Defendants, in light of the medical information and the resources they have,

violates Sliwinksi's Eighth Amendment rights. "[U]nnecessary and wanton

infliction of pain" is the sine qua non of an Eighth Amendment violation. *Edmo v.*

*Corizon, Inc.*, 949 F.3d 489, 494 (9th Cir. 2020) (citing *Estelle*, 429 U.S. at 104.)

Sliwinski is receiving fairly constant care, prompt emergency treatment when required, and consultations with experts to determine the best course of treatment for his illnesses. The Court concludes Sliwinski has not suffered the "unnecessary and wanton infliction of pain" due to Defendants' care of him. Sliwinksi has not raised any disputed material facts that would warrant trial. Defendants are entitled to summary judgment.

Based on the foregoing, the Court enters the following:

### ORDER

1.  Defendants' Motion for Summary Judgment (Doc. 50) is GRANTED.

2.  The Clerk of Court is directed to enter judgment and close this matter, pursuant to Fed. R. Civ. P. 58.

3.  The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 18th day of January, 2023.

_____

Brian Morris, Chief District Judge
United States District Court